UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN WALTER GINDA., <br>    *Plaintiff*, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> COMMISSIONER OF THE SOCIAL <br> SECURITY ADMINISTRATION, <br>    *Defendant*. | No. 3:16-cv-00692 (JAM) |

**RULING ON CROSS MOTIONS TO REMAND AND AFFIRM
THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Steven Ginda claimed he was disabled and could not work as a result of a combination of ailments including severe back pain, anxiety, and depression. His claim for disability insurance was denied by the Commissioner of Social Security. He now brings this action under 42 U.S.C. § 405(g) seeking review of that decision. I assume the parties' general familiarity with plaintiff's claims and the record in this case.

To qualify for disability insurance benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do h[is] previous work but cannot, considering h[is] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(l)(A), 423(d)(2)(A)).

To evaluate a claimant's disability, and determine whether he or she qualifies for benefits, the agency engages in a well-established five-step process. *See Cage v. Comm'r of Soc.*

1

*Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012). Here, neither side disputes the agency's decision at Step One, and the decision of the ALJ proceeded only so far as Step Two. At Step Two, the Commissioner "considers whether the claimant has a 'severe impairment' that significantly limits [his] physical or mental ability to do basic work activities." *Ibid.* The claimant has the burden of proof at this step, and the Court may only set aside the ALJ's determination "if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).

"The standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Thus, "a claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the [claimant's] physical or mental ability(ies) to perform basic work activities." SSR 85–28, 1985 WL 56856, at *3 (1985).

The ALJ's conclusion that plaintiff's combination of impairments is only *de minimis* was not supported by substantial evidence. Plaintiff's treating physician, Dr. Zebrowski, found in September 2014 that plaintiff had a lumbosacral spasm that meant that plaintiff needed the opportunity to shift at will from sitting, standing, or walking. Doc. #17-10 at 86. Dr. Zebrowski estimated that plaintiff would need to lie down at unpredictable intervals as many as six times during an eight-hour working shift. *Ibid.* Dr. Zebrowski also assessed limitations on a number of other abilities, including plaintiff's ability to twist, stoop, crouch, reach, push, pull, and concentrate on work tasks. *Id.* at 86–87. These assessments, if taken as accurate, clearly indicate a combination of impairments with more than a minimal effect on an individual's ability to work.

The ALJ's decision not to accord these findings "significant probative value," Doc. #17-3 at 25, was in error. First, the ALJ erred in stating that "no objective findings of spasm appear in any of [Dr. Zebrowski's] treatment notes." *Ibid*. One set of Dr. Zebrowski's treatment notes reads "moderate L/S spasm," the same notation Dr. Zebrowski used on his assessment of plaintiff's functional limitations. Doc. #17-9 at 31; Doc. #17-10 at 86.

Second, the ALJ was incorrect in concluding that Dr. Zebrowski's assessments are contradicted by the assessments made by the agency's physicians. Dr. Zebrowski's assessments took place in June 2013, November 2013, and September 2014. Doc. #17-10 at 2–16, 86–87. The agency's consultative examining physician conducted his assessment in November 2012, and the non-examining reviewers were limited to the record as it existed in April 2013. Doc. #17-9 at 3; Doc. #17-3 at 25. All of the information in front of the ALJ was thus consistent with a scenario in which plaintiff's physical condition deteriorated in 2013. That timeline, moreover, was suggested by Dr. Zebrowski's treatment notes. Between September 2011 and July 2013, Dr. Zebrowski noted no abnormal musculoskeletal findings. *See* Doc. #17-9 at 38–96; Doc. #17-10 at 55–63. But beginning in late 2013 and continuing into 2014, Dr. Zebrowski consistently noted abnormalities in plaintiff's gait. Doc. #17-10 at 18–53; Doc. #17-11 at 3–9. Dr. Alahmadi, plaintiff's consulting physician, noted in June 2014 that plaintiff believed his gait was getting worse with time, and that the MRIs of plaintiff's back supported the interpretation that his spastic gait was consistent with cervical myelopathy. Doc. #17-10 at 90. Dr. Alahmadi indicated that surgery was necessary to manage plaintiff's condition. *Ibid.*

There were thus significant objective findings in the record from two treating physicians indicating that plaintiff's impairment was severe enough to significantly limit his physical abilities and had grown worse since late 2012 or early 2013. "[T]he opinion of a claimant's

3

treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128. The ALJ erred in relying on older evidence from non-treating physicians in the presence of newer evidence from plaintiff's treating physicians, especially when the gap in time meant the two sets of evidence did not necessarily conflict. *See Acevedo v. Astrue*, 2012 WL 4377323, at *16 (S.D.N.Y. 2012).

The ALJ also erred in discounting Dr. Zebrowski's assessments for not being adequately corroborated by his treatment notes. The Second Circuit has made clear that if an ALJ intends to discount the opinion of a treating physician for failure of the treating physician to substantiate the clinical bases of the physician's medical conclusions, then the appropriate course is for the ALJ to seek additional information from the treating physician. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *Thornton v. Colvin*, 2016 WL 525994, at *6–*8 (D. Conn. 2016). To the extent the ALJ saw inconsistencies or gaps between Dr. Zebrowski's treatment notes and his assessments of plaintiff's limitations on medical source statements, he should have developed the record rather than outright rejecting plaintiff's claim.

Plaintiff's motion to reverse or remand (Doc. #21) is therefore GRANTED, and defendant's motion to affirm (Doc. #23) is DENIED. The case is remanded for the ALJ to develop the record in light of the concerns set forth in this opinion and in plaintiff's briefing.

It is so ordered.

Dated at New Haven, Connecticut, this 28th day of February 2017.

        /s/ *Jeffrey Alker Meyer*
        Jeffrey Alker Meyer
        United States District Judge